UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIDA ESCOBAR AGSAOAY,<br><br>                              Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                              Defendant. | Case No. 3:15-CV-02728-GPC-NLS<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(3) REMANDING CLAIM FOR FURTHER PROCEEDINGS BY ADMINISTRATIVE LAW JUDGE** |

On December 4, 2015, Plaintiff Nida Escobar Agsaoay filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits. (Dkt. No. 1.) On October 17, 2016, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial and an award of disability benefits or, alternatively, remand for

1

further administrative proceedings. (Dkt. No. 18.) In it, Plaintiff contends that the Administrative Law Judge ("ALJ") committed reversible error by failing to articulate specific, clear and convincing reasons for rejecting her testimony due to a lack of credibility. (*Id.*) On November 15, 2016, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. (Dkt. Nos. 20, 21.) Plaintiff did not file an opposition to Defendant's cross-motion or reply to Defendant's opposition. On January 1, 2017, United States Magistrate Judge Nita L. Stormes issued a Report and Recommendation (R&R), pursuant to 28 U.S.C. § 636(b)(1), recommending judgment for the Plaintiff. (Dkt. No. 22.) No objections to the Report were filed.

For the reasons set forth herein, and after a careful consideration of the moving papers, the administrative record and the applicable law, this Court adopts the Magistrate Judge's Report and Recommendation and thereby **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** the case for further administrative proceedings.

## 28 U.S.C. § 636 Review

The district court reviews a Magistrate Judge's Report and Recommendation as set forth in 28 U.S.C. § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). In the absence of timely objection, however, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note. When no objections are filed, therefore, a district court may assume the correctness of the magistrate judge's proposed findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court for N. Dist. of California*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

/ / / /
/ / / /

# BACKGROUND

## A. The Claimant

Plaintiff was born September 4, 1960, and is currently 56 years old. (Dkt. No. 10-5, Administrative Record ("AR") at 174.)[1] She graduated high school and attended three years of college, though she did not receive a degree or specialize in any particular field of study. (Dkt. No. 10-2, AR at 25.) She worked as a cashier and checker at a retail outlet from 1997 until 2008, and worked as a dietary aide and caregiver at a nursing home from 1995 to 1997. (*Id.* at 25, 40-42.) Currently, she supports herself financially with funds received from her husband's retirement pay and lives with her two adult children and cousin. (*Id.* at 27.) Plaintiff alleges she is disabled for a variety of reasons, including, for lower back pain, right leg problems, numbness in her hands, cervical myelopathy, central spinal cord dysfunction, right knee meniscal tear, and for the fact that her C-4/C-5 vertebrate are rubbing together. (*See* Dkt. 10-3, AR at 55.) As a result of these and other conditions, Plaintiff alleges that she has been disabled since February 2008. (*See* Dkt. No. 10-5, AR at 174.)

## B. Administrative Proceedings

On April 25, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Act. (Dkt. No. 10-5, AR at 172-77.) In it, Plaintiff alleged that she was unable to work due to a disabling condition beginning on February 15, 2008. (*Id.* at 174.) The Commissioner denied the application initially and upon reconsideration. (Dkt. No. 11, AR at 807.) On January 9, 2014, Plaintiff testified at an administrative hearing before ALJ James Carletti. (*Id.*) The issue before the ALJ concerned whether Plaintiff was disabled within the meaning of Sections 216(i) and

---

[1] All references to the Administrative Record refer to the internal pagination provided by the administrative papers.

223(d) of the Act on or before March 31, 2011, referred to as the "date of last insured."[2] (*Id.*)

### 1. Claimant's Medical Evidence

The Administrative Record before the ALJ included the following documents relating to Plaintiff's various health conditions.

### a. Prior to March 31, 2011, date of last insured

The earliest medical records in the Administrative Record date back to February 12, 2008, when Plaintiff received care at the Naval Medical Center San Diego. (Dkt. No. 10-7, Exhibit 1F, AR at 244.) Medical notes concerning Plaintiff's preoperative gynecological examination for a total abdominal hysterectomy indicated that Plaintiff had a globular and irregular contoured uterus. (*Id.* at 245.) Other than that condition, however, the medical records indicate that Plaintiff was otherwise well developed, well nourished, and oriented to time, place and person, and that her neck, lungs, cardiovascular system, and abdomen were all within normal ranges. (*Id.*) Plaintiff's other medical records from this time period relate to pre-operative and post-operative examinations on conditions that are not at issue in the current complaint. (R&R, Dkt. No. 22 at 3; Dkt. No. 10-7, AR at 238-82.)

The Administrative Record also contains a number of outpatient hospital records from the Naval Medical Center San Diego that span from January 2010 to the date last insured of March 31, 2011.[3] (Dkt. No. 10-8 and 10-9, Exhibit 5F, AR at 509-631.) These records show that Plaintiff made numerous visits to the Naval Medical Center for issues relating to her back, neck, and knee pain as well as for heaviness and pain in her

---

[2] To be eligible for social security disability, a claimant must be disabled and insured. *See, e.g.*, *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Therefore, in order to receive benefits, the claimant must show a disability as defined by the SSA on or before the "date of last insured." *Id.*

[3] Despite some documents in the record listing the date last insured as April 30, 2011, (*see, e.g.*, AR at 55), evidence in the record indicates that Plaintiff's date last insured was actually March 31, 2011, (*see, e.g.*, AR at 122.) Regardless, the ALJ determined that March 31, 2011 was the correct date last insured, and the parties do not contest this finding. (*See* AR at 809.) Accordingly, the Court will follow suit.

hands. (*Id.*) The medical records include various physical examination findings and medical impressions relating to the Plaintiff's alleged symptoms. (*Id.*)

### b. After date last insured

The remainder of the medical records included in the Administrative Record were issued after the date last insured. (Dkt. No. 10, Exhibit 2F, AR at 301-24 [records from Paradise Valley Hospital dated 1/24/2012 – 2/14/2012]; Exhibit 3F, AR at 325-425 [workers' compensation evaluation by Dr. Steiner, dated 5/10/2011 – 4/24/2012]; Exhibit 5F, AR at 353-509 [records from Naval Medical Center San Diego, dated 5/31/2011 – 10/24/2012]; Exhibit 7F, AR at 640-84 [records from Balboa Naval Medical Center, dated 6/3/2013 – 6/10/2013]; Exhibit 8F, AR at 685-799 [records from Coronado Naval Medical Center, dated 5/19/2012 –11/25/2013]; Exhibit 9F, AR at 800-803 [a physical Residual Functional Capacity assessment by Dr. Diane Wong, dated 11/25/2013].)

### 2. Claimant's administrative testimony

At the hearing before the ALJ, Plaintiff testified about her physical conditions and resulting pain, her daily activities, and her current ability to sit and stand. (Dkt. No. 10-2, AR at 23-35.) In 2008, she was diagnosed with severe anemia due to an imbalance of hormones. (*Id.* at 25) As a result of the anemia and the medication prescribed to her, she stopped working. Plaintiff testified that she did not go back to work after recovering from her anemia because of her knee. (*Id.*) Sometime in 2010, Plaintiff testified, she accidentally tore the meniscus in her knee while trying to enter her SUV. (*Id.*) Plaintiff testified that, despite receiving physical therapy and knee injections, she has not fully recovered from that injury as she still feels pain in that knee. (*Id.* at 25-26, 35.) She testified that she was prescribed a cane in 2010 and that she always uses it in order to take weight off of her knee and to help her with balance and to prevent falling, which had happened once before. (*Id.* at 31-32, 34.) She also stated she wears a metal knee brace both in public and at home to help her walk. (*Id.* at 31-32.)

Plaintiff testified that the pain she feels in her knee, lower back and hands are her biggest problems. (*Id.* at 31.) She said her lower back pain started in 2011.[4] (*Id.* at 31.) She also testified that she has numbness from her neck down to her shoulders and into both of her hands that is "never gone." (*Id.* at 33-34.) She stated that this numbness prevents her from being able to dress herself because she "cannot . . . grab." (*Id.* at 33.) Medication prescribed by her primary physician, moreover, does not fully eliminate this pain. (*Id.* at 28-29, 34.) Plaintiff further testified that one of the medications, in fact, makes her drowsy and adversely affects her vision and concentration. (*Id.* at 29-31.)

In terms of daily activities, Plaintiff testified that she is able to drive, cook, clean, and go grocery shopping. (*Id.* at 28.) However, she can only perform these tasks "a little bit" and her children help her "a lot." (*Id.* at 28.) She further testified that she can sit down for thirty minutes before having to stand up, can stand for ten to fifteen minutes at a time, can only lift objects up to five pounds, and can walk about a block. (*Id.* at 32-33.) However, Plaintiff testified that she cannot dress herself due to the numbness in her hands, and that she lays down most of the time because her neck and shoulders make her tired. (*Id.* at 33-34.)

### 3. Opinion testimony: Thomas Scott, M.D.

At the hearing before the ALJ, Dr. Thomas Scott testified that he had reviewed Exhibits 1-9 in the record and determined that the medical evidence indicated that Plaintiff has degenerative disc disease in the cervical spine and lumbar spine, carpel tunnel syndrome, a possible tear in the medial clavicle ligament in her left knee, and is post-operative for spine fusion. (Dkt. No. 10-2, AR at 36-37.) He stated, "[h]owever . . . I find nothing that suggests she equals or meets the listings [of a SSA disability impairment]." (*Id.* at 36.) He opined that during an eight-hour work day, Plaintiff could stand for a total of two hours, walk a total of two hours, and sit for a total of six hours

---

[4] However, medical records from the Naval Medical Center San Diego indicate Plaintiff sought treatment for lower back pain as early as April 20, 2010. (Dkt. No. 10-8, Exhibit 5F, AR at 577.) The medical record further suggests that she has complained of lower back pain since August 2008. (*Id.*)

with interruptions. (*Id.* at 37.) He also stated that she appears capable of occasionally lifting and carrying up to ten pounds. (*Id.*) He further determined that there was no limitation in the use of her extremities, except for the fine manipulation of her hands and fingers, which would be limited to occasional use. (*Id.*)

### C. The ALJ's decision and application of the five-step process

In order to grant disability insurance benefits under the Social Security Act, an ALJ must conduct a five-step sequential disability analysis. 20 C.F.R. § 404.1520(a). Those five steps, in turn, require an ALJ to inquire as to the following:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f)

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The claimant carries the burden of showing eligibility at Steps 1 through 4. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1512(d). At Step 5, however, the Commissioner bears the burden of demonstrating that the claimant "can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)) (quoting 20 C.F.R § 404.1560(b)(3)).

/ / / /

After conducting this five-step analysis, the ALJ ultimately concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date of February 15, 2008 through the date of last insured March 31, 2011. (Dkt. No. 11, AR at 809-13.)  At Step 1, the ALJ found that the Plaintiff did not engage in substantial gainful activity during the time period of the alleged disability. (*Id.* at 809.) At step 2, he concluded that Plaintiff had several severe impairments. (*Id.* at 809.)  At step 3, however, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 810.)  Specifically, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work under 20 C.F.R. § 404.1567(a), "except with the capacity to lift 10 pounds occasionally, stand a total of 2 hours in an eight hour workday, walk a total of 2 hours in an eight hour workday, and sit a total of 6 hours in an eight hour workday. [Plaintiff] can occasionally perform fine manipulation bilaterally." (*Id.* at 810.)  Finally, at step 4, the ALJ found Plaintiff was capable of performing past relevant work as a food service manager and, thus, was not disabled for purposes of disability benefits under the Act. (*Id.* at 812-13.)

The ALJ's decision, issued February 3, 2014, became final on October 5, 2015 when the Appeals Council denied Plaintiff's request for review. (Dkt. No. 10-2, AR at 1-6, 14-16.)  Thereafter, Plaintiff filed the complaint currently before the court.

## JUDICIAL REVIEW OF FINAL AGENCY DECISION

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. § 405(g).  The reviewing court may not reverse the Commissioner's denial of benefits unless it is not supported by substantial evidence or based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  Substantial evidence means "relevant evidence, which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (defining "substantial evidence" as more than a scintilla, but less than a preponderance).

Courts must weigh the record as a whole to determine whether substantial evidence is present and must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if the Court finds substantial evidence to support the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). An ALJ's decision will not be reversed for errors that are harmless. *Burch* 400 F.3d at 679.

## DISCUSSION

Plaintiff asserts the ALJ's decision must be reversed because it is not supported by substantial evidence and is the result of legal error. She contends that the ALJ failed to articulate specific and legitimate reasons, much less clear and convincing reasons, for rejecting Plaintiff's credible testimony about the intensity and persistence of her pain and disabling symptoms. Defendant, in turn, argues that the ALJ's credibility determination was legally sufficient. For the following reasons, however, the Court rejects each of Defendant's arguments and concludes that remand is warranted.

**A. Review of ALJ's Credibility Determination**

The Ninth Circuit has consistently held that reviewing courts should "leave it to the administrative law judge to determine credibility, resolve conflicts in testimony, and resolve other ambiguities on the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). That is not to say, however, that an ALJ's credibility determination is immune from review. An ALJ's credibility findings must be supported by specific, clear

and convincing reasons.  *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). Accordingly, "in order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

In deciding whether a plaintiff's testimony regarding subjective pain is credible, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see also Vasquez v. Astrue*, 572 F.3d 586, 590 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quoting *Vasquez*, 572 F.3d at 590). Second, if the claimant met the first test and no evidence of malingering exists, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[5]  *Id.*

To satisfy the specific, clear and convincing standard for discrediting subjective pain or the intensity of symptoms, the ALJ must identify what parts of the testimony are not credible and what evidence undermines the claimant's complaints.  *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  Factors that the ALJ must consider when evaluating the credibility of a plaintiff's testimony include "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating

---

[5] Defendant maintains that this standard is inconsistent with the substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings. (Dkt. No. 20-1 at 4.)  The Ninth Circuit, however, made clear in *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) that the ALJ must provide "specific, clear, and convincing" reasons to discredit a claimant's testimony.  Accordingly and in light of Defendant's concession that *Burrell* is binding on this Court, the Court will apply the specific, clear and convincing standard.

factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Smolen*, 80 F.3d at 1284. "Ordinary techniques of credibility evaluation," may also be relied upon by an ALJ and include "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, . . . and . . . the claimant's daily activities." *Id.* "General findings," however, are "insufficient" under this standard. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). *Id.* It is also insufficient for an ALJ to articulate specific, clear, and convincing reasons merely by "partially and artfully, discrediting testimony 'to the extent that' or 'insofar as' it conflicts with her RFC determination." *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1059 (N.D. Cal. 2014) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim*, 763 F.3d at 1163.

### B. Step 2 of Credibility Analysis

The Court's inquiry, here, will focus on the second step of the credibility analysis as there is no dispute that the ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. (Dkt. No. 11, AR at 811.) The following analysis, therefore, evaluates whether the ALJ articulated "specific, clear and convincing" reasons for rejecting Plaintiff's testimony.

After having found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ concluded — nonetheless — that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.* at 11.) The reasons that followed this assertion included the following:

> [1] "[T]he claimant's alleged inability to work due to degenerative disease of the cervical spine; status post cervical spine fusion; degenerative disc disease . . . [is not supported by] by evidence which shows that the claimant is functionally unable to work"

[2] "The medical record prior to the date last insured of March 31, 2011 is very limited and does not support a more restrictive residual functional capacity . . . ."
[3] "Exams performed after the date last insured were largely unremarkable."
[4] "The remainder of the medical records are dated after the date last insured."
[5] "Based on those [medical records] and the claimant's testimony, it was his [Dr. Scott's] expert medical opinion that the claimant was reduced to sedentary work."
[6] "[T]he claimant's own description of her daily activities."[6]

(*Id.* at 811-12 (brackets supplied)). The Court notes that the first four reasons are similar in that they all point to the lack of medical evidence corroborating the claimant's conditions as a reason for disregarding her subjective symptoms assertions. Accordingly, the Court will address these findings together. The fifth and sixth reason, however, are distinct and, therefore, will be treated separately.

### 1. Daily Activities

Defendant argues that the ALJ found Plaintiff not credible because her description of her daily activities contradicted her testimony. (Dkt. No. 20-1 at 8). The Court disagrees. Had the ALJ discussed the inconsistencies between Plaintiff's daily activities and her subjective assertions of her pain and symptoms, the Court might have been in a position to affirm that conclusion as "specific, clear and convincing." *See, e.g.*, 20 C.F.R. § 404.1529(c)(3)(i); *Molina*, 674 F.3d at 1113. The ALJ, however, does not even discuss Plaintiff's daily activities in Step 2 of his analysis and such an omission is fatal under Ninth Circuit law.

Although it is proper to rely upon a claimant's daily activities in making a credibility determination, *see Smolen*, 80 F.3d at 1284, the ALJ wholly failed to articulate how Plaintiff's daily activities caused him to discredit her testimony. Daily

---

[6] The Court observes that the ALJ introduces this factor for the first time in his conclusion, which focuses on the "residual functional capacity assessment" and not the Plaintiff's credibility. (*Id.* at 811.) Regardless, because Defendant asserts that the ALJ's assessment of Plaintiff's daily activities affected his credibility determination, the Court will address this reason as a factor in the ALJ's credibility analysis. (*See* Dkt. No. 20-1 at 8-9.)

12

activities can form the basis of an adverse credibility determination if either (1) the claimant's daily activities contradict prior testimony or claimed limitation or (2) the claimant's daily activities meet the threshold for physical functions that are transferable to the work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ's decision, however, failed to satisfy either prong as it did not even discuss Plaintiff's daily activities in the Step 2 analysis.

Plaintiff maintains that she cannot walk more than a block, is unable to dress herself, and lays down most of the time, even though she can cook, clean, and go grocery shopping "a little bit" with the help of her children. (Dkt. No. 10-2, AR at 28, 33-34.) The ALJ does not explain how Plaintiff's description of these, and other, daily activities is inconsistent with her claimed limitations. Accordingly, and absent any reasoning demonstrating how Plaintiff's daily activities undermine or contradict her pain testimony, the ALJ has failed to provide specific, clear and convincing reasons for relying on Plaintiff's daily activities as a reason to discount her credibility. *See Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with the claimant's alleged limitations would these activities have any bearing on Claimant's credibility.") This lack of reasoning as to the relevance of Plaintiff's daily activities is also insufficient under the second *Orn* prong. The ALJ made no specific findings regarding claimant's daily activities and failed to mention, nonetheless analyze, how Plaintiff's daily activities could be transferred to a full-time job. Thus, without further explanation from the ALJ, Plaintiff's daily activities cannot serve as a basis for discrediting her testimony under the "specific, clear and convincing" standard.

**2. Expert's Opinion**

The expert opinion of Dr. Scott also cannot support an adverse credibility determination. In reaching his decision on Plaintiff's disability claim, the ALJ relied, in large part, on Dr. Scott's testimony about Plaintiff's medical history and impairments and his opinion that Plaintiff was reduced to sedentary work with certain restrictions. (Dkt. No. 11, AR at 812.) The ALJ explained that he gave Dr. Scott's opinion "great weight"

13

because Dr. Scott reviewed the entire medical record including Plaintiff's testimony, and because his opinion was well supported by medical evidence and not inconsistent with other substantial evidence in the record. (*Id.*)

Yet the fact that it is proper for the ALJ to consider expert testimony when passing judgment on the credibility of a claimant, does not mean that the ALJ provided "specific, clear and convincing reasons" for doing so. ALJs are permitted to consider any inconsistencies between a claimant's testimony and a physician's regarding the nature, severity and effect of symptoms complained about, when making a determination about the claimant's credibility. *See Smolen*, 80 F.3d at 1284. As the Report and Recommendation pointed out, however, it is entirely unclear whether the ALJ's decision in fact relied on Dr. Scott's opinion as a reason to doubt Plaintiff's credibility. (R&R, Dkt. No. 22 at 12-13.)

The ALJ's decision goes to great lengths to explain the findings that informed Dr. Scott's residual functional capacity assessment, but says nothing about how those findings contradict Plaintiff's testimony, or what parts of Plaintiff's testimony Dr. Scott disagreed with and why. (Dkt. No. 11 at 811-812.) At most, the Court could infer that the ALJ discounted Plaintiff's credibility "to the extent" that it was inconsistent with that of Dr. Scott, but such a generic conclusion is not enough to meet the "specific, clear and convincing" standard. *See Ghanim*, 763 F.3d at 1163 ("General findings are insufficient [under this standard] . . . the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ is required to identify what parts of Plaintiff's testimony are not credible and what evidence undermines Plaintiff's complaints, his general reliance on Dr. Scott's opinion fails to adequately support his conclusion that Plaintiff' testimony was not credible. *See Berry*, 622 F.3d at 1234; *cf. Schultz*, 32 F. Supp. 3d at 1059 (ALJ may not evade duty to articulate specific, clear and convincing reasons merely by "partially, and artfully discrediting testimony 'to the extent that' or 'insofar as' it conflicts with her RFC determination). Therefore, the Court finds that the ALJ failed to articulate "specific,

clear and convincing reasons" for discounting Plaintiff's credibility based upon the testimony of Dr. Scott.

### 3. Lack of Objective Medical Evidence

The paucity of objective medical evidence in the record is also insufficient to support the ALJ's adverse credibility finding.

Defendant argues that the lack of treatment records for the relevant time period adversely affected Plaintiff's credibility because it suggests that Plaintiff's symptoms "were not as significant as she alleged." (Dkt. No. 20-1 at 5.) In other words, Defendant is contending that Plaintiff's failure to seek treatment for her pain, as demonstrated by her lack of treatment records, supports the ALJ's credibility determination. (*Id.*) The issue, however, with Defendant's argument is that no such line of argument or conclusion appears in the ALJ's decision. Nowhere does the ALJ say that he drew the inference that Plaintiff's medical testimony was not credible because she failed to seek treatment for her symptoms. *See Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding ALJ provided a specific, clear and convincing reason by inferring that pain was not all-disabling in light of fact that claimant did not seek aggressive treatment program). Accordingly, and given that the Court's review is limited to those arguments made by the ALJ, the Court rejects this argument. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely.").

Defendant further argues that the lack of medical records was also relevant to the ALJ's credibility determination because it meant that claimant's pain testimony was not corroborated by objective medical evidence. This fact alone, however, is not enough to discredit a plaintiff's testimony concerning the intensity of pain and symptoms. *Bunnell*, 947 F.2d at 345 ("once the claimant produced objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") Thus, because the Court has rejected the ALJ's other reasons for discrediting Plaintiff's testimony, the Court concludes that the lack of objective medical records is not enough to support the ALJ's adverse credibility determination.

The Court further concludes that the ALJ's reliance on the lack of objective medical records is also insufficient because the ALJ missed, and therefore did not analyze, a number of Plaintiff's relevant medical records. As the Report and Recommendation points out, the ALJ erred when he concluded that there were only "limited records before the date last insured" to support Plaintiff's claimed limitations. (R&R, Dkt. No. 22 10-11.) The ALJ's decision refers to Exhibit 1F as containing records before the date last insured and Exhibits 5F and 7F-9F as containing medical records after the date last insured. This reference, however, is incorrect as Exhibit 5F contains a number of medical records that span from January 2010 up to the date last insured and that, moreover, corroborate Plaintiff's pain testimony. (*Id.*) The Report explains:

> Those records [in Exhibit 5F] reflect information about Plaintiff's symptom complaints, as well as physical examination findings and impressions regarding Plaintiff's spine, back pain, knee pain, heaviness in her hands, and pain in her hands. [citation] As just a few examples, some of those records from January and February of 2011 document that she has chronic back and knee pain (AR 519, 522), that her spine pain is elicited by motion extension, flexion, and lateral bending (AR 523), and that her back pain was persistent and she continues to take medications for pain relief, and still has pain with walking, especially in the right knee, and left low back area (AR 529).

(Dkt. No. 22, Report at 11.) Given the ALJ's failure to consider all of Plaintiff's treatment records before the date last insured, and particularly in light of the fact that those records directly bear on Plaintiff's pain testimony, the Court cannot conclude that the ALJ's analysis satisfies the "specific, clear and convincing" standard. The ALJ selectively relied upon portions of the record that supported his findings while completely ignoring other portions of the record that corroborated Plaintiff's testimony. His

16

incomplete assessment, therefore, fails to persuade the Court that the lack of medical records was a legally sufficient reason for rejecting Plaintiff's testimony as not credible.

### C. Prejudice

In sum, the ALJ erred when he found Plaintiff was not entirely credible because he did not provide legally sufficient "specific, clear and convincing" reasons for doing so. *See Molina*, 674 F.3d at 1112. The Court must set aside the decision because the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *See Benitez*, 573 F.2d at 655. Such an error would be harmless if "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, however, it is impossible for the Court to determine if the ALJ would have reached the same result had he found Plaintiff's testimony credible and had he properly considered all of Plaintiff's medical records before the date last insured. Thus, because the ALJ did not identify any specific clear and convincing reasons for finding the Plaintiff's testimony about her pain not credible and because he did not properly consider all of the records before the date last insured, the Court concludes that the ALJ's credibility finding was not harmless error. The Court, therefore, will not affirm the Commissioner's denial of benefits. *See Molina*, 674 F.3d at 1112; *Bayliss*, 427 F.3d at 1214 n.1.

### 1. Remedy

In light of the ALJ's legal error, Plaintiff requests that the Court reverse and remand the case for immediate payment of benefits because there are no outstanding issues that must be resolved. (Dkt. No. 18-1 at 12-13.) Defendant, in turn, contends that the proper disposition is for the case to be remanded for further proceedings because there is doubt as to whether Plaintiff is, in fact, disabled. (Dkt. No. 20-1 at 9-10.)

In general, when a reviewing court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v.*

17

1  *Ventura*, 537 U.S. 12, 16 (2002)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th
2  Cir. 2004) (stating, in a Social Security disability case, that remand is appropriate in most
3  circumstances).  A reviewing court may reverse and award benefits when (1) the record
4  has been fully developed and further administrative proceedings would serve no useful
5  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
6  evidence, whether claimant testimony or medical opinion; and (3) if the improperly
7  discredited evidence were credited as true, the ALJ would be required to find the
8  claimant disabled on remand.  *Garrison*, 759 F.3d at 1020; *see also Orn*, 495 F.3d at 640;
9  *Benecke*, 379 F.3d at 595; *Smolen*, 80 F.3d at 1292.

10       The Report and Recommendation recommended that the claim be reversed and
11 remanded for further proceedings to correct the ALJ's legal errors.  (R&R, Dkt. No. 22 at
12 15.)  This Court agrees.  After considering both party's requests, the Court finds remand
13 for further proceedings more appropriate than an award for payment of benefits.  *See*
14 *Vasquez*, 572 F.3d at 600-01 (agreeing that a court need not "credit as true" improperly
15 rejected claimant testimony where there are outstanding issues that must be resolved
16 before a proper disability determination can be made).  Because the ALJ's decision failed
17 to articulate specific, clear and convincing reasons for discrediting the Plaintiff's
18 testimony, the Court cannot properly determine whether the ALJ's adverse credibility
19 finding is supported by substantial evidence.  Accordingly, this outstanding issue needs to
20 be resolved before a proper disability determination can be made, and remand for
21 additional proceedings is, therefore, warranted.

## CONCLUSION

23       The ALJ committed legal error by failing to give specific, clear and convincing
24 reasons for finding Plaintiff's testimony about the extent and intensity of her pain not
25 credible.  The Court finds that the ALJ's decision to deny Plaintiff disability benefits
26 should be reversed and remanded to correct the errors as laid out in this order.
27 Accordingly, for the reasons explained above, the Court **GRANTS** Plaintiff's Motion for
28

Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REMANDS** the claim for further proceedings consistent with this Order.

On remand, the Court recommends that the ALJ (1) reconsider Plaintiff's testimony and credibility in light of all medical records dated before the date last insured in Exhibit 5F; (2) explain his reasons for determining the extent to which Plaintiff was credible and how this determination affected Plaintiff's claim for benefits; (3) include clarification as to whether Dr. Scott's opinion was relied upon as a basis for evaluating Plaintiff's testimony and to what extent that opinion impacted the analysis; and (4) explain how Plaintiff's daily activities impacted the determination of Plaintiff's claim for benefits.

**IT IS SO ORDERED.**

Dated: March 28, 2017

Hon. Gonzalo P. Curiel
United States District Judge